# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OBIE LEE CRISP, III, | Case No. 1:13-cv-01899-AWI-SKO (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATION THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED** |
| v. | |
| WASCO STATE PRISON, et al., | **(Doc. 34)** |
| Defendants. | **TWENTY-ONE DAY DEADLINE** |

## INTRODUCTION

Plaintiff, Obie Lee Crisp, III, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action on November 22, 2013. On December 28, 2015, Defendants filed a motion for summary judgment raising Plaintiff's failure to exhaust available administrative remedies before filing suit in compliance with 42 U.S.C. § 1997e(a) with respect to his federal claims, Fed. R. Civ. P.[1] 56(c); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014). (Doc. 34.) After various extensions of time, Plaintiff filed his opposition.[2] (Doc. 53.) Defendants filed their reply. (Doc. 42.) The motion is deemed submitted. L.R. 230(*l*).

For the reasons discussed below, the Court finds that Defendants have not met their burden and their motion should be DENIED.

---

[1] The Federal Rules of Civil Procedure will be referred to as "Rule *."

[2] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies with Defendants' moving papers as well as a separate order from this Court. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Docs. 34, 41.)

1

**DISCUSSION**

**A.    Legal Standards**

    **1.    Statutory Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532; 122 S.Ct. 983 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). Further, an inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001). However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

    **2.    Summary Judgment Standard**

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment. *Jones*, 549 U.S. at 216; *Albino v. Baca*, 697 F.3d 1023, 1166 (9th Cir. 2012). The Court shall grant summary judgment if the movant shows no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including

2

but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

To meet their burden, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172).  If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  *Williams*, at 1166.  The action should then be dismissed without prejudice.  *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**3.     Summary of CDCR's Inmate Appeals Process**

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs., tit. 15, § 3084, *et seq*.  Compliance with § 1997e(a) requires CDCR prisoners to use that process to exhaust their claims.  *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, a CDCR inmate may initiate the grievance process by submitting a Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested."  Cal. Code Regs., tit. 15, § 3084.2(a).  An IA must be submitted within 30 calendar days of the event or decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed.  Tit. 15 § 3084.8(b).  The inmate is

3

limited to raising one issue, or a related set of issues, per IA in the space provided on the first page of the IA form and one attached page (which must be on the prescribed Attachment form "602-A") in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2), & (4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents must be submitted with the IA; if they are not available, copies may be submitted with an explanation why the originals are not available and are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level within thirty days, and thereafter to the third-level. Tit. 15 §§ 3084.2, & 3084.7. First and second-level appeals shall be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States Postal Service. Tit. 15 § 3084.2(d).

The Court must determine if Plaintiff filed any IAs concerning his claims, and if so, whether Plaintiff complied with CDCR's process. If Plaintiff did not comply, the court looks to whether it was because the process had been rendered unavailable. *Ross*, 136 S. Ct. at 1859; *Sapp*, 623 F.3d at 823.

**B.   Summary of Facts Underlying Plaintiff's Claims**

Plaintiff, who is currently incarcerated at California Health Care Facility ("CHCF") in Stockton, alleges that he arrived at Wasco State Prison ("WSP") on or around June 12, 2012.[3] He was morbidly obese at almost seven-hundred pounds, mobility impaired, and a participant in the Correctional Clinic Case Management Services ("CCCMS") level of mental health care.[4] Plaintiff

---

[3] The Court takes judicial notice of the fact that Plaintiff was admitted into the custody of the California Department of Corrections and Rehabilitation ("CDCR") on June 14, 2012, a fact which is publically available on the CDCR website. Fed. R. Evid. 201; *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (courts may take judicial notice of matters of public record); *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1024 (N.D.Cal. 2014) (publically accessible websites subject to judicial notice).

[4] CCCMS is the lowest of the four levels of care within the prison system's Mental Health Services Delivery Program. *Coleman v. Schwarzenegger*, 922 F.Supp.2d 882, 903 (E.D. Cal. 2009). "The CCCMS level of care is for inmates whose symptoms are under control or in partial remission and can function in the general prison population, administrative segregation, or segregated housing units." *Coleman*, 922 F.Supp.2d at 903 n.24.

was enrolled in the WSP Correctional Treatment Center's Long Term/Chronic Care Program ("LT/CCP"). The LT/CCP was designed to ensure that Plaintiff's past medical needs and/or documented health risks were thoroughly reviewed and monitored for improvement or deterioration, with a weekly and monthly reporting requirement. The failure to shower daily was a documented risk to Plaintiff's health and resulted in skinfold tears and infections. Daily showers were prescribed (via a medical "chrono") to address Plaintiff's medical needs and disabilities, and was known by all of the named defendants.

To access the shower, Plaintiff had to be wheeled there, which required use of a functional wheelchair. Plaintiff relied heavily on his wheelchair for daily activities which began breaking down between February and March of 2013.

As of April 1, 2013, the wheelchair was no longer functional. As a result, Plaintiff was dragged in his wheelchair from his room to the shower for approximately a month, usually by non-defendant Officer Price. On or around April 28, 2013, C/O Price told Plaintiff that his wheelchair was not going to be fixed as long as C/O Price was getting the job done. C/O Price informed the CTC nurses that they were going to have to drag Plaintiff around in his wheelchair which led to Plaintiff no longer being taken to the showers. Although Plaintiff was promised he would only miss his shower for "a few days" because a wheelchair was going to be expedited or delivered overnight, this did not occur.

On or around May 7, 2013, Plaintiff learned that no one had informed United Health Services ("UHS") that his wheelchair was broken.[5] Plaintiff was told that if someone would call the home office, the UHS representative could replace the front wheels and have the chair back to Plaintiff in two days; however, no one did anything or took the UHS representative up on this offer. Plaintiff alleges that between April 28, 2013, and June 1, 2013, he communicated verbally and in writing about his need for a functioning wheelchair with Defendants Youseff, Klang, Bradford, Grant, Htay, Kranrod, Larson, Cadiz, Medina, and Chan, who either ignored him or responded by making excuses.

//

---

[5] UHS was the outside supplier or vendor for Plaintiff's wheelchair.

When Plaintiff arrived at WSP, the prison had a "hand-crank Hoyer lift." WSP then obtained a new "ADA weight capacity" lift that was specifically intended to accommodate Plaintiff by lifting him and carrying him to the shower. C/O Price performed a successful test run with the Hoyer lift on or around May 14, 2013. Plaintiff informed the defendants, except for Cisco, of the successful test run. Although the lift could have been used to ensure he received his daily shower, staff refused to use it. Plaintiff alleges staff members made notes in his medical records to make it appear he was receiving showers, to cover up the deterioration of his health.

Plaintiff also required perirectal cleaning by medical staff. From January of 2013 through June of 2013, this procedure was performed in an aggressive and abusive manner that repeatedly resulted in tears around Plaintiff's anus. One such cleaning on February 20, 2013 resulted in a blood soaked towel and required approximately three weeks to heal. Plaintiff's complaints either fell on deaf ears or notations were made in his medical chart to intentionally cover up the painful and rough manner in which the procedure was regularly performed.

Plaintiff is proceeding on claims for violation of the Eighth Amendment and negligence under California Law against Defendants Youseff, Klang, Htay, Bradford, Grant, Kranrod, Chan, Larson, Cadiz, Medina, Stine, Pennelosa, Cisco, Joseph, Richardson, and Doe 1 based on (1) the failure to provide Plaintiff with both a functional wheelchair and/or access to the Hoyer lift between April 28, 2013, and June 1, 2013, which resulted in Plaintiff not receiving adequate opportunity to bathe/shower to maintain his hygiene/health; and (2) the failure by Defendants Stine and Pennelosa to protect Plaintiff from harm by subordinate staff during perirectal cleanings. (Doc. 19, 3rd Screen O; Doc. 23, Cog. Claim O.) The above allegations were also found to state cognizable claims against WSP, for violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") based on the failure to both provide a functioning wheelchair and to make reasonable accommodations to facilitate Plaintiff's daily access to the shower. (*Id.*) The Court must determine whether Plaintiff exhausted available administrative remedies on these issues.

//

### C.     Defendants' Motion[6]

Defendants concede that Plaintiff exhausted his administrative remedies against Defendant Joseph for inadequate opportunity to bathe/shower, but assert that Plaintiff neither exhausted available administrative remedies on his Eighth Amendment and negligence claims against the remaining individual Defendants, nor on his ADA and RA claims against WSP.  (Doc. 34-1.)

Defendants assert that, "within the relevant timeframe," Plaintiff only submitted four IA which were accepted by the health care appeals office:  WSP-HC-13044350/WSP-SC-13000227[7]; WSP-HC-13044404; WSP-HC-13044161; and WSP-HC-14046726.  (Doc. 34-1, 5:20-22.) Defendants correctly assert that WSP-HC-13044161 involved a request by Plaintiff to be considered for medical parole and WSP-HC-14046726 involved Plaintiff's request for clarification between nursing protocols and the Title 15 provisions.  (*Id.*, 5:22-24.)  Defendants also correctly note that neither WSP-HC-13044350/WSP-SC-13000227 nor WSP-HC-13044404 were processed through the Third Level of Review[8] before Plaintiff initiated this action on November 22, 2013.  (*Id.*, 5:24-26 citing DUF 29.)  Defendants thereafter only address WSP-HC-13044404 and WSP-HC-13044350/WSP-SC-1300022 in their motion.

### 1. Defendants Have Not Met Their Burden of Showing That Plaintiff Failed to Exhaust Available Administrative Remedies For His Claims Based on Deprivation of Daily Access to Showers Via a Functioning Wheelchair or Hoyer Lift

Defendants' evidence shows that Plaintiff filed WSP-HC-13044404 on May 23, 2013.  (Doc. 34-4, pp. 56-60.)  Plaintiff explained that on May 5, 2013, he showed both Defendant

---

[6] All references to pages of specific documents pertain to those set forth on the upper-right corners as a result of the CM/ECF electronic court docketing system.

[7] This IA has two numbers because although it was initially accepted as a health care appeal, the "Hiring Authority's designee" determined it should be processed as a staff complaint, which generated a new tracking number.  (*See* Doc. 34-4, p. 43.)

[8] The Court rejects Defendants' premise (*see id.*, at 5:10-15) that a Director's Level response is necessary to satisfy the exhaustion requirement and the mere absence of a Director's Level response entitles them to dismissal.  *Brown v. Valoff*, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available.").

7

1  Joseph and C/O Price areas under folds of his skin that were pink and raw such that "the infamous
2  'skin tear' is just around the corner" which would take approximately two weeks to heal. (*Id.*, p.
3  59.) Plaintiff further stated that, because of the "wheelchair debacle," he had not been able to
4  shower for nearly a week. (*Id.*) Plaintiff cited his shower chrono on file which showed daily
5  showers were medically necessary and requested a temporary wheelchair to be able to take
6  showers. (*Id.*, p. 57.) This IA was granted at the First Level on July 18, 2013. (*Id.*, p. 56.)

7  Defendants assert that, since Plaintiff only named Defendant Joseph in this IA, the prison
8  was deprived of examining the other Defendants' alleged involvement to resolve the issue at the
9  institutional level. (Doc. 34-1, p. 6.) Defendants rely on § 3084.2(a)(3) which requires an inmate
10 to list all involved staff members with a description of their involvement of the issue in an IA.
11 (Doc. 34-1, pp. 5-6, citing tit. 15 § 3084.2(a)(3).) However, although § 3084.2(a)(3) requires an
12 inmate to name all staff members involved in the matter, Defendants' evidence reveals that the
13 only direction Plaintiff was given regarding the required content of an IA is found on the face of
14 the IA form: "Explain your issue." (Doc. 34-4, p. 57.) Defendants fail to show, as is their
15 burden, that the identification requirements of § 3084.2(a)(3) were publicized or provided to
16 Plaintiff to inform him that he needed to list all prison personnel he felt were involved in the
17 matter in a given IA.

18 Requiring a list of all potentially involved prison personnel, where the form provided
19 only directed Plaintiff to "explain" the issue, without informing him of the requirement to identify
20 all prison personnel he intends to implicate, effectively renders the remedy unavailable. *Ross v.*
21 *Blake*, --- U.S. ---, 136 S. Ct. 1850, 1859-60 (2016) ("Remedies that rational inmates cannot be
22 expected to use are not capable of accomplishing their purposes and so are not available").

23 Defendants also contend that Plaintiff never filed an IA that raised the factual basis of his
24 claims against the individual Defendants, other than Defendant Joseph. Defendants rely on
25 § 3084.2(a)(4) which provides that an inmate must state all facts known and available to him
26 regarding the issue being appealed when submitting an IA. (Doc. 34-1, pp. 6-9.) However, even
27 though § 3084.2(a)(4) of Title 15 requires a detailed statement of all facts known and available,
28 the only direction available to Plaintiff regarding the required content is the instruction on the

8

face of the IA form to explain the issue.  (*See* Doc. 34-4, p. 57.)   The form itself also restricts an inmate to explaining his issue in less than a page (i.e. little over three lines that do not run the width on the first page, and the space allotted on one "CDCR 602-A" form, an attachment to the IA, which provides a little over eighteen lines, that also do not run the entire width of the page).  (*See* Doc. 34-4, pp. 57, 59.)   Defendants fail to show that the specificity requirements of § 3084.2(a)(4) were publicized to inmates so as to inform Plaintiff that he needed to list all facts on which he intended to eventually file suit in a given IA.  The precise specificity required by § 3084.2(a)(4) is also unclear since it is not defined.  Requiring a detailed presentation of facts, where the only direction provided to Plaintiff was on the face of the form to "explain" the issue in a very limited space, effectively rendered the remedy unavailable since the detailed factual specificity of § 3084.2(a)(4) that Defendants rely on was "essentially 'unknowable.'" *Ross*, 136 S. Ct. at 1859-60 (2016).

   Plaintiff's statements in WSP-HC-13044404 generally alerted prison staff that he was being deprived of daily showers because he was not provided a functioning wheelchair and/or access to the Hoyer lift in deliberate indifference to his serious medical need.  This met "[t]he primary purpose of a grievance [ ,] to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Griffin*, 557 F.3d at 1122, *ref Johnson v. Johnson*, 385 F.3d at 522, cited with approval in *Jones*, 549 U.S. at 219.  "All the grievance need do is object intelligibly to some asserted shortcoming.'" *Johnson*, 380 F.3d at 697 *quoting Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (standards established in *Strong* are appropriately applied to ascertain whether prisoner grievances are sufficient to notify prison personnel of a problem for exhaustion purposes.)  Thus, WSP-HC-13044404 sufficed for exhaustion purposes on the substance of Plaintiff's claims based on his inability to obtain a daily shower because he did not have access to a functioning wheelchair and/or Hoyer lift -- which is the basis of his claims under the Eighth Amendment and California law against all of the individual Defendants as well as his claims against WSP under the ADA and RA.

//

In sum, Defendants fail to either argue or submit evidence to suggest that Plaintiff had been provided with or had access to the IA requirements in Title 15 when he filed WSP-HC-13044404 based on his inability to shower daily without a functional wheelchair or use of the Hoyer lift.[9]

### 2. Defendants Have Not Met Their Burden to Show That Plaintiff Failed to Exhaust Available Administrative Remedies on His Claims of Harmful/Abusive Perirectal Cleaning Procedures

Defendants acknowledge that Plaintiff complained of "inadequate treatment for a skin tear on his anus" and an inability to shower in WSP-HC-13044350/WSP-SC-13000227. (Doc. 34-1, 5:27-28, citing Decl. Gonzalez, Ex. C.) Defendants also acknowledge that Plaintiff named Defendants Joseph, Penalosa, and Htay in this IA. (*Id.*, 5:28-6:1.) Defendants nonetheless assert that Plaintiff failed to exhaust available administrative remedies before filing this suit because the IA was not processed at the third level of review until April 4, 2014 -- which was more than five months after Plaintiff filed this action. (*Id.*, 6:1-14.) A review of the chronological order of events regarding this IA reveals that it was neither timely, nor properly processed at WSP, which caused the third level of review to be delayed until nearly a year after Plaintiff filed it.

Plaintiff signed and dated WSP-HC-13044350/WSP-SC-13000227 in mid-May 2013 and it is stamped as initially received by "HC APPEALS" on May 15, 2013.[10] (Doc. 34-4, p. 46.) Defendants also submit a form signed by a person at "Wasco State Prison-Reception Center" on May 23, 2013, which determined that this IA did not meet "the required criteria to designate it as an emergency appeal" under CCR Title 15, Section 3084.9(a)(1) and "be processed in accordance with the **CCR Title 15, Section 3084.7** using regular time frames." (*Id.*, p. 53, (emphasis in original).) The IA form includes a stamp in the box for the first level review which reflects it was bypassed; the IA was also accepted at the first level of review with "Date Assigned" of "5-28-13" and a "Date Due" of "6-26-13." (Doc. 34-4, p. 46.)

---

[9] Plaintiff also submitted a declaration stating that he was not provided a copy of Title 15, the Department Operations Manual ("D.O.M."), or an orientation handbook while he was at WSP and that he never had any access to the law library while he was at WSP due to his mobility difficulties. (*See* Doc. 47, pp. 9, 11.)

[10] This IA is dated "5/12/13" on the first page and "5/13/13" on the third page. (Doc. 34-4, pp. 46, 48.)

1    The box for the second level review on the IA form indicates it was accepted for second
2    level of review, assigned to "CTC," with "Date Assigned" of "6/27/13" and a "Date Due" of
3    "8/8/13," the "Date of Interview" reflects "7/22/13," and the checked box reflects that it was
4    granted in part. (*Id.*, p. 47.) On July 18, 2013, the HealthCare Appeals Coordinator sent Plaintiff
5    a letter titled "Staff Complaint Assignment Notice Second Level SC Appeal." (*Id.*, p. 43.)
6    Plaintiff was advised that although this appeal had initially been accepted as a healthcare
7    complaint, it would be processed as a staff complaint. (*Id.*) The letter further indicated that
8    Plaintiff could file a separate appeal to address his healthcare concerns, or he could use the "sick
9    call" process if he required further medical assistance. (*Id.*) The letter did not indicate that
10   Plaintiff was required to take any further action on this IA. (*Id.*)

11   The evidence reveals that nothing further happened on this IA until three months later, on
12   October 14, 2013, when the first level response as a staff complaint was finally generated. (*Id.*,
13   pp. 50-51.) The bottom of the first page of the first level response to this IA as a staff complaint
14   reflects a note in Plaintiff's handwriting, "Received 12/09/13[11] 'nearly 2 months' how & why so
15   late." (*Id.*, (emphasis in original).) In the box for the second level review on the IA form, the
16   WSP interviewer's signature is dated October 24, 2013 -- over three months after the date the
17   interview took place. (*Id.*, p. 47.) Defendants also fail to explain why Plaintiff's statement of
18   dissatisfaction with the first level review on this IA as a staff complaint is dated December 9,
19   2013 -- approximately two months *after* all of the entries in the box for staff use on the second
20   level of review. (*Id.*, pp. 47, 49.)

21   Title 15 states that responses at the first and second levels of review shall be completed
22   within thirty working days from the date of receipt by the appeals coordinator. Tit. 15 §
23   3084.8(c)(1), (2). Third level responses shall be completed within sixty working days from date
24   of receipt by the third level Appeals Chief. Tit. 15 § 3084.8(c)(3). Exceptions to these time

---

[11] A close examination of the date of this note reveals that Plaintiff wrote "12/09/13" in the same pen as the rest of the note and that someone else wrote the number "10" in a different, dark pen over the number "09." It appears that the number "10" was not written by Plaintiff as the number one is written with a horizontal line at the bottom and an angled line coming down from the top of the vertical line, whereas all of the number ones in Plaintiff's notes and/or allegations are drawn with a single, vertical line. Defendants do not address the editing of the date written by Plaintiff.

11

limits are only authorized for the unavailability of the inmate, staff, or witnesses; unusual complexity of the issue which requires additional research; or for issues that require involvement of other agencies or jurisdiction. Tit. 15 § 3084.8(d).[12] Except for the third level, if an exceptional delay prevents completion of the review within specified time limits, the appellant, within the time limits provided in subsection 3084.8(c), shall be provided an explanation of the reasons for the delay and the estimated completion date. Tit. 15 § 3084.8(e). The IA form indicates that, if dissatisfied with a response at any level, inmates are to submit their response to the next level within thirty days of receipt of the unsatisfactory response. (*See e.g.* Doc. 34-4, pp. 46, 47.)

Defendants provide no explanation for the lapse of two months between Plaintiff's initial filing of WSP-HC-13044350/WSP-SC-13000227 in mid-May of 2013, and the first response that was generated on July 18, 2013, which simply advised that it was assigned as a staff complaint for second level review. Defendants also fail to explain the nearly three month lapse of time between the letter which reassigned this IA from a health care appeal to a staff complaint in July (Doc. 34-4, p. 43) to the October 14, 2013 first level response as a staff complaint (*id.*, pp. 50-51). This delay far exceeded the time limit for a first level response. Tit. 15 § 3084.8(c)(1), (2). Additionally, Defendants fail to explain the nearly two month delay in delivering the first level review of this IA as a staff complaint to Plaintiff. (*Id.*, p. 50.)

Plaintiff initiated WSP-HC-13044350/WSP-SC-13000227 on May 13, 2013. (Doc. 34-4, p. 46.) The first level review should have issued within thirty days – on June 13, 2013. Plaintiff's response to the first level review would have been due in thirty days – on July 13, 2013. The second level review should have issued within thirty days, or no later than August 13, 2013. Plaintiff would have had thirty days, up to September 13, 2013, to file a response to the second level review, and the third level review should have issued within sixty days – on November 13, 2013 – nine days before Plaintiff filed this action.

//

---

[12] Appeals that are accepted as an emergency have different time limits, tit. 15 § 3084.9(a)(4), (a)(5), none of which apply here since this IA was not accepted as an emergency.

12

Improper screening and/or processing of an inmate's administrative grievance "renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010). Here, the delayed and improper processing or handling of WSP-HC-13044350/WSP-SC-13000227 rendered the administrative remedies effectively unavailable to Plaintiff on his claims regarding the perirectal cleanings to which he was subjected at WSP. Defendants should not be rewarded for the untimely processing of this IA which resulted in its untimely resolution.

## **RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on December 28, 2015, be DENIED.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **21 days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 30, 2016**                    /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE